# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 3:09-CV-00484-R

JENNIFER PEAVEY                                                            PLAINTIFF

v.

UNIVERSITY OF LOUISVILLE, et al.                                      DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court upon Defendants James T. Jennings, Kentucky Physicians Health Foundation, Elizabeth Hornbeck and Donetta Wolfe's Motion for Summary Judgment (DN 43). Plaintiff responded (DN 47, 49) and Defendants replied (DN 48). This matter is now ripe for adjudication. For the reasons that follow, Defendants' Motion is GRANTED.

Also before the Court is Defendants James T. Jennings, Kentucky Physicians Health Foundation, Elizabeth Hornbeck and Donetta Wolfe's Motion to Strike (DN 51), to which Plaintiff responded (DN 58). This matter is now ripe for adjudication. Defendants request the Court strike Plaintiff's Reply in Opposition to Defendants' Reply in Support of Motion for Summary Judgment (DN 49) because Plaintiff did not seek leave of the Court to file an additional pleading. Defendants' Motion is DENIED. The Court, in its discretion, will consider the arguments set forth in Plaintiff's reply.

## BACKGROUND

This action arises out of Plaintiff Dr. Jennifer Peavey's release from the University of Louisville School of Medicine's Glasgow Family Medicine training program. Peavey, an African American female, filed suit *pro se* against fifteen defendants, alleging violations of 42 U.S.C. §§ 1983, 1981, 1985, and 1986, as well as claims of breach of contract, defamation, libel,

slander, wrongful discharge, breach of covenant of good faith and fair dealing, and fraud and deceit. Defendants James T. Jennings, Kentucky Physicians Health Foundation, Elizabeth Hornbeck and Donetta Wolfe ("KPHF Defendants") request that the Court enter summary judgment in their favor because there are no genuine issues of material fact and they are entitled to judgment as a matter of law. Only those facts relevant to these KPHF Defendants are summarized below.

The Kentucky Physicians Health Foundation ("KPHF") is the assumed name of the Kentucky Committee on Impaired Physicians, Inc., a non-profit Kentucky corporation. Pursuant to KRS § 311.616, the Kentucky Board of Medical Licensure created an impaired physicians program and implemented the program through the KPHF. *See* KRS § 311.617. The board established this program "to promote the early identification, intervention, treatment, and rehabilitation of physicians who may be impaired by reason of illness, alcohol or drug abuse, or as a result of any physical or mental condition." KRS § 311.616. Dr. James T. Jennings is the Medical Director of the KPGH, Elizabeth Hornbeck is the Clinical Coordinator, and Donetta Wolfe is the Clinical Assistant.

Dr. Brent Wright, a defendant in this case, is the Residency Director for the University of Louisville's residency program in Glasgow, Kentucky. In July 2008, Wright referred Peavey to Jennings at the KPHF. Peavey states that Wright informed her that not meeting with Jennings would be deemed a violation of her academic probation and grounds for immediate dismissal. Wright told Jennings that Peavey had some behavioral issues related to her residency and had been placed on academic probation.

Peavey's initial meeting with Jennings took place at the offices of the KPHF in Louisville

on July 22, 2008. Wolfe was also present at the meeting. Peavey wished to make an audio recording of the session, but after Jennings informed her that KPHF policy does not allow such recordings, Peavey rescheduled the meeting so that a third party could be present.

Peavey, with her pastor and pastor's wife, returned to the KPHF on July 31, 2008, to meet with Jennings. Hornbeck and Wolfe were also present at the meeting. According to Jennings, Peavey stated that she was unsure why she needed to meet with him and informed him that she had filed a grievance with the University of Louisville in relation to what she described as racially charged comments. They discussed Peavey's family and educational background, but Jennings did not perform a psychiatric evaluation. Because Peavey's grievance with the University had not yet been resolved, Jennings determined that it was in everyone's best interest to wait until the grievance process resolved before he undertook a psychiatric evaluation. In a letter to Wright dated July 31, 2008, Jennings recommended that Peavey have a formal psychiatric evaluation given the behavioral questions raised during her residency, but not until her grievance with the University had settled. Jennings sent a copy of the letter to Peavey that day, as well as another copy on August 28, 2008, via certified mail after she informed him that she had not received the first copy.

On September 19, 2008, Jennings received a faxed letter from Wright stating that Peavey's grievance against the University had been resolved, and that an investigation found no evidence of discrimination. Wright's letter also stated that Peavey was to contact the KPHF to make an appointment for a psychiatric evaluation to comply with the terms of her academic probation. Peavey never made an appointment for an evaluation with the KPHF.

3

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

**ANALYSIS**

**1.     42 U.S.C. § 1983**

To prevail on her claim brought under 42 U.S.C. § 1983, Peavey "must establish that a person acting under color of state law deprived [her] of a right secured by the Constitution or

laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001). Because the KPHF is a private corporation and Jennings, Hornbeck and Wolfe are employees of KPHF, in order to establish liability under § 1983 Peavey must show that their actions were "fairly attributable to the state." *Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir. 1996) (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 947 (1982)). The Sixth Circuit employs three tests to determine whether the conduct of private persons is fairly attributable to the state: "(1) the public function test, (2) the state compulsion test and (3) the symbiotic relationship or nexus test." *Id.*

"Under the public function test, a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). Courts have interpreted the public function test narrowly. *Id.* Examples of a private party acting under color of state law have included "holding elections, exercising eminent domain, and operating a company-owned town." *Id.* (citations omitted). Additionally, the plaintiff bears the burden of showing that "an action is one traditionally the exclusive prerogative of the state." *Ellison v. Garbarino*, 48 F.3d 192, 196 (6th Cir. 1995). Here, Jennings met with Peavey and recommended she have a formal psychiatric evaluation. Hornbeck and Wolfe were present at the meeting. This service is not a power traditionally reserved to the state. *See Reguli v. Guffee*, No. 09-5558, 2010 WL 1252950, at *8 (6th Cir. Mar. 31, 2010) (finding that providing counseling services to teenager as part of program teen was required by court order to attend is not a power reserved exclusively to the state).

"The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

5

"More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Id.* In this case, there is no evidence that the state coerced or encouraged any of the KPHF Defendants to act as they did. *See Reguli*, 2010 WL 1252950, at *9 (finding state did not control actions of counselor who provided services for the state).

Finally, "[u]nder the symbiotic or nexus test, a section 1983 claimant must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman*, 319 F.3d at 834. Determining whether a private party is a state actor is a fact-specific inquiry. *Id.* Here, Peavey was referred to the KPHF by the University of Louisville, but there is no evidence that the actions taken by Jennings or the other KPHF Defendants were entwined with any governmental policy, management or control. *See Reguli*, 2010 WL 1252950, at *9 (finding counselor appointed by court and required to report to court did not have sufficient nexus with state).

Peavey has not shown that any of the KPHF Defendant's actions were fairly attributable to the state. Therefore, her section 1983 claim against them fails.

### 2. 42 U.S.C. § 1981

Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006). "In order to establish a claim for racial discrimination under section 1981, a plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right

enumerated in section 1981(a)," which includes the right to make and enforce contracts. *Id.* "[T]he 'intent' element of the claim can be established either by direct evidence or inferentially." *Id.*

As an African American, Peavey satisfies the first element required to establish a claim for racial discrimination. Fatal to her section 1981 claim, however, is the fact that Peavey has not provided any evidence that the KPHF Defendants discriminated against her based on her race. Peavey also has not provided the Court with facts showing that the conduct of the KPHF Defendants abridged her right to make, perform, modify or terminate any contract. She argues that the University could not have suspended her if Jennings had not recommended she undergo a psychiatric evaluation, citing an October 6, 2008, letter from Wright stating that he will request suspension immediately because she had not made arrangements for further evaluation through the KPHF. This letter, however, does not demonstrate any conduct on the part of the KPHF Defendants. Even assuming that Wright improperly referred Peavey to the KPHF or unjustly suspended her for refusing to undergo an evaluation, as she argues, this implicates Wright, not the KPHF Defendants. The KPHF Defendants did not prevent Peavey from undergoing the evaluation. There is no evidence that the KPHF Defendants impaired or interfered with Peavey's contract with the University of Louisville.

### 3. 42 U.S.C. § 1985

Section 1985 prohibits a conspiracy "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." 42 U.S.C. § 1985. "To prevail on a § 1985(3) claim, one must prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly,

any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (citations omitted). Moreover, "'[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Peavey argues that the KPHF Defendants willingly participated in a conspiracy with the University of Louisville by recommending a psychiatric evaluation in violation of the University's policies and procedures. But there is no evidence that Jennings was limited by the University policies when he recommended a psychological evaluation. Peavey has offered no proof of a conspiracy, no proof that the KPHF Defendants were part of any conspiracy, and no proof that any action taken by the KPHF and its employees was driven by discriminatory animus. Therefore, the KPHF Defendants are entitled to summary judgment with respect to Peavey's section 1985 claim.

### 4. 42 U.S.C. § 1986

"Section 1986 establishes a cause of action against anyone, who has knowledge of a conspiracy under § 1985, and 'having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" *Radvansky*, 395 F.3d at 314 (quoting 42 U.S.C. § 1986). "But '[w]here plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986.'" *Id.* at 315 (quoting *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir.1990)).

Because Peavey failed to establish a cause of action under § 1985, her § 1986 cause of action also fails.

     **5.     State Law Claims**

In addition to her federal civil rights claims, Peavey alleges in Counts III-VI that the Defendants committed state law violations of breach of contract, defamation, wrongful discharge, breach of covenant of good faith and fair dealing, and fraud and deceit. Because Peavey has not provided evidence that any action taken by the KPHF Defendants was taken outside of their duties or with actual malice, the KPHF Defendants are statutorily immune from her state law claims.

> Any member of the impaired physicians program created under KRS 311.616, as well as any administrator, staff member, consultant, agent, or employee of the program acting within the scope of his or her duties and without actual malice, and all other persons who furnish information to the program in good faith and without actual malice, shall not be liable for any claim or damages as a result of any statement, decision, opinion, investigation, or action taken by the program, or by any individual member of the program.

Kentucky law provides:

KRS § 311.6191. As explained above, the impaired physicians program created under KRS § 311.616 was implemented through the KPHF. In her Complaint, Peavey makes no allegation that any statement, decision, opinion, investigation, or action taken by the KPFH Defendants was with "actual malice." In her brief, she argues that based on Jennings's report "it was reported to the Federation of State Medical Boards that Dr. Peavey suffers from mental illness," but there is no evidence that Jennings had any role in that information being relayed to the Federation. In fact, in her Complaint, Peavey states that Wright was the one who reported Peavey "displayed eccentric behavior and implied mental illness." Jennings only met with Peavey and

recommended, based on her reported behavioral issues, that she undergo a psychiatric evaluation sometime after her grievance with the University settled.  Peavey has not offered any facts to show that the KPHF Defendants acted outside the scope of their duties or with actual malice.

Furthermore, the facts of the case do not support Peavey's state law claims against the KPHF Defendants.  They cannot be liable for breach of contract or breach of the covenant of good faith and fair dealing because there was never a contractual relationship between the KPHF Defendants and Peavey.  Likewise, the KPHF Defendants cannot be liable for wrongful discharge because they never employed Peavey.  The KPHF Defendants cannot be liable for fraud and deceit because they made no representations to Peavey upon which she could rely to her detriment.  Finally, the KPHF Defendants cannot be liable for defamation, libel or slander.  Peavey's claim involves the report to the Federation of State Medical Boards that she was mentally ill.  There is no evidence that any of the KPHF Defendants were involved in this alleged report.  Further, the only statement from one of the KPHF Defendants published to a third party, the letter from Jennings to Wright, does not contain defamatory statements.  In it, Jennings stated "[a]t this time, given the behavioral questions raised regarding her work during her residency, it would be my recommendation that she have a formal psychiatric evaluation." This recommendation is entitled to absolute privilege.  *See Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541, 554 (W.D. Ky. 2005) (expression of opinion is entitled to absolute privilege).

## CONCLUSION

For the foregoing reasons, Defendants James T. Jennings, Kentucky Physicians Health Foundation, Elizabeth Hornbeck and Donetta Wolfe's Motion to Strike (DN 51) is DENIED and

10

their Motion for Summary Judgment (DN 43) is GRANTED. Defendants James T. Jennings, Kentucky Physicians Health Foundation, Elizabeth Hornbeck and Donetta Wolfe are dismissed from this action. An appropriate order shall follow.