UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:09-CV-00484-R

JENNIFER PEAVEY                                                    PLAINTIFF

v.

UNIVERSITY OF LOUISVILLE, et al.                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Second Motion to Compel Discovery (DN 90). Defendants have responded (DN 91) and Plaintiff has replied (DN 93). This motion is now ripe for adjudication. For the following reasons, Plaintiff's Motion is DENIED.

## BACKGROUND

This action arises out of Plaintiff Dr. Jennifer Peavey's, *pro se*, release from the University of Louisville School of Medicine's Glasgow Family Medicine training program. Peavey, an African American female, filed suit against fifteen Defendants, alleging violations of 42 U.S.C. §§ 1983, 1981, 1985, and 1986, as well as claims of breach of contract, defamation, libel, slander, wrongful discharge, breach of covenant of good faith and fair dealing, fraud, and deceit.

In Peavey's complaint, she outlines an allegation of racial discrimination directed toward her by the supervisor of her medical rotation while she was in her residency with the University of Louisville School of Medicine (the "University"). Peavey claims that she relayed certain derogatory remarks made by her supervisor to human resources and to the chairman of her department at the University. Peavey declares that in retaliation for this charge of discrimination, she was placed on academic probation by the school. The University disputes

1

this version of events, stating that Peavey was placed on probation for a variety of other, unrelated reasons. In investigating Peavey's allegations, two hearings were conducted before the University's Academic Committee ("the Committee"). The Committee held a grievance pre-hearing on October 7, 2008, ("October Hearing") and an official grievance hearing on November 24, 2008 ("November Hearing") (collectively "Hearings"). While both parties agree that the latter was electronically recorded, there is disagreement regarding whether the October Hearing was as well.

A scheduling order was issued in October of 2009, stating that all discovery was to be completed by June 1, 2010. DN 35. On April 10, 2010, Peavey submitted a motion to compel for this Court's consideration. In it, she claimed that Defendants failed to deliver a number of items to which she believed she was entitled, including taped recordings of the Hearings. The parties are in accord that at the start of this discovery dispute, all were under the impression that both Hearings had been recorded, and each presented their motions to the Court as if this were the case. After reviewing the parties' positions, the Court denied the majority of Peavey's motion, finding that she had failed to confer with Defendants in good faith about her discovery concerns. DN 81 at 4. However, it did order Defendants to turn over audio recordings of the Hearings, in large part because Peavey was then residing in Virginia, while the recordings were located in Louisville, Kentucky. *Id.* at 5.

Shortly after the Court's ruling, Defendants released the audio copies of the November Hearing to Peavey; they also indicated that counsel for Defendants had only recently learned that the October Hearing had not been recorded, and consequently there were no audio tapes to provide. Peavey now strenuously objects to this revelation surrounding the October Hearing and

2

avers that opposing counsel and Defendants have been less the genuine in responding to these legitimate discovery requests.

Following, a telephonic conference held on December 7, 2010, the Court ordered Peavey to submit any further discovery difficulties with the Court via a second motion to compel. DN 88. This motion followed. Contained within it, Peavey presents her evidence demonstrating the existence of audio recordings of the October Hearing, objects to the quality of the recordings she received on the November Hearing, and complains that Defendants have refused to release a number of other discoverable items. For their part, Defendants urge the Court to deny this motion, asserting that Peavey's discovery requests are overbroad, seek nonexistent materials, or have been previously addressed by their earlier disclosures.

## STANDARD

Determining "the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). Under Rule 37(a)(1), "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). In doing so, "the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.* Motions to compel discovery are authorized where a party fails to provide proper responses to interrogatories under Rule 33 or requests for production of documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

Discovery requests are not limitless. "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing and a trial court retains discretion to determine that a discovery request is too broad and

oppressive.'" *Surles v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007) (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)).

The federal rules of civil procedure dictate that parties must produce only discoverable items if they "are already in existence." *Harris v. Koenig*, 271 F.R.D. 356 (D.D.C. 2010) (quoting *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 1, 8 (D.D.C. 2010)); *see*, *Gorton v. Bick*, No. 1:05-CV-00354, 2010 WL 3825696, at *2 (E.D. Cal. Sept 28, 2010) ("The Court cannot compel the production of non-existent documents."). "Lack of evidence showing that a producing party is in fact in possession of [an item] is grounds to deny a motion to compel." *Harris*, 271 F.R.D. at 356 (citations omitted).

## DISCUSSION

Peavey's motion claims that Defendants have failed to release the following discoverable materials: (1) the audio recordings of the October Hearing, (2) usable recordings of the November Hearing, (3) clinical evaluations of her residency, (4) documentation from an interview between Peavey and Harvey Johnson, (5) reports made by her instructors detailing Peavey's "eccentric behavior," (6) copies of pay checks she received during her residency, and (7) documents detailing Peavey's medical licensure applications. The Court will address each in turn.

### I. Audio Recordings of the October Hearings

Regarding the October Hearing, Peavey steadfastly maintains that University officials recorded this meeting and are now concealing these audio tapes. In support of this assertion, she first points to the earlier discovery responses from Defendants that make reference to the recordings. Next, Peavey offers a correspondence between herself and Sherri F. Pawson, the

4

University's Records Officer. DN 90-6 at 2. She finally references the personal notes of Dr. Brent Wright as definitive proof of the recording's existence. DN 90-7 at 2. To counter this evidence and to buttress their own contentions, Defendants provide an affidavit by Karen Perry, the University's Coordinator of the Faculty Committee Office. DN 91-3. In it, Perry claims that her responsibilities are managing the grievance process with medical residents at the University, and that as a policy, grievance pre-hearings are not recorded. *Id*. at 1-2.

After scrutinizing the exhibits and arguments by both parties, the Court believes that there is insufficient evidence to demonstrate that the October Hearing was recorded on tape or by any other method. First, counsel for Defendants has admitted that the prior discovery responses referencing these recordings are the result of his mistaken impression that they indeed existed; since discovering the truth, counsel has worked to correct the misunderstanding, having informed Peavey on a number of occasions that the University does not possess the recordings.[1] DN 91-1. The statements upon which Peavey relies thus provide scant support for her proposition. Next, Peavey's correspondence with Pawson does not indicate one way or the other if the grievance pre-hearing was in fact recorded. In her initial letter to Pawson, Peavey petitioned for the audio files for the Hearings. DN 90-5. Pawson's reply however does not reference the existence of two separate recordings; instead, the letter states that there were "327 pages of records and 7 digital recordings that are responsive to [her] request." DN 90-6. Peavey

---

[1] While this misunderstanding has consumed an unfortunate amount time in this litigation, the Court has reviewed the record and believes both that defense counsel's actions were innocent and had they transpired in most other litigation, the parties would have resolved the issue absent the Court's interjection. Moreover, the Court rejects outright Peavey's assertions that defense counsel has deceived her or intentionally withheld discoverable material to which she is entitled. Nothing in the record supports these baseless allegations; the Court has further found defense counsel to be professional and courteous through the entirety of these proceedings.

5

suggests that by using the word "recordings," the plural form of the word indicates that both hearings were electronically transcribed. Nevertheless, at best it is unclear whether Pawson used the word "recordings" because she was referring to two distinct audio files. The Court will not take the broad latitude Peavey espouses in adopting the underlying meaning she has assigned Pawson's reply. Besides Dr. Brent Wright's personal notes, discussed below, Peavey has not put forward any other reliable evidence that the October Hearing was recorded. The other items she offers fail to raise even the suspicion that Defendants possess these audio tapes. *See* DN 90-3; DN 90-4; DN 90-8. Accordingly, they are not considered.

The only persuasive evidence that Peavey provides is Dr. Brent Wright's personal notes. They unambiguously state that the October Hearing was a "taped meeting." DN 90-7 at 2. Defendants claim that this statement is unreliable, as it was only a personal note written by Wright to himself and therefore should not be given great weight. Peavey objects to this characterization. While somewhat demonstrative of the recording's existence, Wright's notes must be weighed against Karen Perry's affidavit to the contrary. The Court has examined both exhibits and, simply put, Perry's sworn statement is far more reliable evidence than Wright's personal notes. Perry is tasked with managing the grievance hearing and therefore has first-hand knowledge about which hearings are generally recorded and whether there are audio files of the October Hearing. Wright does not possess the same responsibility or background, and therefore the veracity of his recollection is subject to question. That the statement appears in his personal notes makes the pertinent remark even less convincing. Thus, the Court rejects Wright's notes as indicative of the recording's existence.

Overall, the evidence Peavey offers concerning the October Hearings and whether or not

they were recorded is unavailing. As she has failed to show that the recordings exist, these materials are not discoverable under the federal rules, and therefore this portion of her motion is denied.

## II. Audio Recordings of the November Hearings

Peavey also takes issue with the quality of the audio recordings from the November Hearing. She charges that the copies of the recordings she received are inaudible and that the Defendants "never described [the recording] as difficult to copy." DN 90-1 at 8. Peavey is incorrect. Defendants told her as early as April of 2010 that the recording of grievance hearing did not copy well. DN 57-2 at 2. This information was again relayed in Defendants' response to her first motion to compel. DN 57 at 4.

While it is unfortunate that the audio recordings of the November Hearings are of poor quality, this information has not been hidden from Peavey as she alleges. Nor does the Court find that Defendants have acted improperly in their attempts to comply with its previous order regarding the November Hearing. Defendants have twice provided Peavey copies of these audio files. In the face of her current complaints, they have made available the original recording for her inspection in Louisville, Kentucky. Although Peavey would expend a great deal of resources traveling this distance,[2] the Court finds this current accommodation more than reasonable.

For these reasons, the Court stands by its previous rulings. Peavey may inspect the original audio recording of the November Hearing in the offices of defense counsel at a mutually convenient time.

## III. Clinical Evaluations

---

[2] Peavey now resides in Miami, Florida.

Peavey further says that Defendants have withheld a number of evaluations from her medical residency rotations.  She declares that although many of these evaluations went unfinished by her supervisors, guidelines applicable to the University's medical school require them to be completed and readily accessible by medical residents.  Peavey has gone so far as to directly contact her past supervisors and to ask them to forward on the full evaluations; she claims that these efforts have been stymied however by defense counsel who has advised the supervisors against the documents' completion.  Peavey protests this action both because it is in violation of the aforementioned regulations, and it has impeded her efforts to find gainful employment in her profession.

Peavey's assertions are misguided for two reasons.  First, the evaluations do not exist; the federal rules are clear that discovery is strictly limited to items that have already been created.  Second, the rules and regulations that she references are not binding upon this Court.  While they may govern the University's policy in dealing with medical residents or its accreditation by some regulatory body, as Peavey suggests, the rules cited do not provide a legal foundation from which the Court can compel University officials to complete and then disclose her evaluations.

The Court sympathizes with Peavey's difficulty in securing a position as a physician; it hopes that the parties are able resolve this issue amicably and supply Peavey with substantially similar documentation that would allow her to more easily find work in her field of study.  Nonetheless, Defendants are not required in the course of litigation to construct these evaluations from scratch and provide them to a party opponent.  Ergo, the request must be denied.

### IV. Documents from Interview with Harvey Johnson

Harvey Johnson is the Director of Affirmative Action and Human Resources for the

University. During the investigation of the Peavey's grievance, Johnson claims that he spoke with her about the alleged incident that gave rise to this matter and created an internal file documenting the inquiry. Peavey denies that this interview ever took place and requests that Defendants turn over "any and all documentation of the purported interview" with Johnson. Defendants claim that they produced Johnson's entire file during the course of discovery and to the extent Peavey is requesting additional documentation about the alleged meeting, these documents do not exist. Peavey responds that the documents previously produced cannot constitute Johnson's whole file, because it includes insufficient proof that the interview did indeed take place. Peavey thus petitions the Court to compel Defendants to turn over definitive evidence that the interview occurred.

Implicit in Peavey's motion is the argument that Defendants or defense counsel have concealed a portion of Johnson's investigative file and are attempting to deny Peavey access to those discoverable items. The record before the Court in no way supports these serious accusations. Moreover, Peavey offers no proof that documents from Johnson's file are missing or have been hidden from her. Rather, the allegations are loosely premised upon excerpts from Johnson's file, and in no way infer the existence of further documentation on Johnson's meeting with her. As there is no proof that the materials for which Peavey petitions are under Defendants' control, this request must be denied.

### V. Reports about Eccentric Behavior

Peavey charges that Dr. Wright created a written report that detailed her "eccentric behavior" and that this document was subsequently submitted to the Federation of State Medical Boards ("FSMB"). According to her motion, Wright based his report and his accusations of

9

eccentricity on other written records provided to him by several of her instructors. Peavey states that the rules of discovery entitle her to these documents created by the instructors. She further explains that as Wright's report is now a part of her permanent medical file with FSMB, the disparaging remarks about her prior behavior are serving to preclude her from locating gainful employment.

Defendants move to contradict Peavey's contentions on this front as well. They claim that Wright did not receive any specific documents from Peavey's instructors when deciding that her behavior had been "eccentric." Instead, Defendants posit that Wright relied upon verbal conversations, rotation evaluations, emails, and letters when he formed the report's conclusions, which was in turn passed on to the FSMB. In addition, they say that these foundational items were relayed on to Peavey in prior discovery responses. Peavey retorts that these are "willful lies" by the Defendant and defense counsel. DN 93 at 15.

The Court finds that there is precious little evidence showing that actual written reports were produced by Peavey's instructors and later passed on to Wright. While the word "report" appears twice in a disciplinary evaluation signed by Wright, it is unclear from this document if the refereed-to reports from the instructors were written or oral. DN 93 at 16. The other proof that Peavey supplies to demonstrate the existence of these documents may be distilled down to mere conjecture and innuendo. Since Peavey has not shown that Defendants are in possession of compliant documentation within the bounds of this request, the Court holds this particular discovery obligation previously fulfilled, and denies the instant motion.

**VI. Copies of Pay Check**

Peavey also requests copies, front and back, of four paychecks[3] issued by the University that she received during her residency. She claims that while she received the front of these checks in earlier disclosures, the backs of the checks were absent. It appears that Peavey believes this information is vital to her unemployment proceedings, as she was denied benefits because she had previously received payment from the University. Defendants insist that they have fully complied with this discovery request by turning over the front of all these checks. They also claim that as the checks were not negotiated by Peavey, they do not possess copies of the rear of these checks.

In denying this request, the Court first finds that the requested documents are not relevant evidence, nor are they likely to lead to the discovery of other relevant evidence. *See* Fed. R. Civ. P. 26(b)(1). Peavey's primary purpose in gathering the backside of these checks appears aimed at receiving redress in an unemployment hearing, a matter that is wholly unrelated to the instant litigation. Additionally, if Peavey failed to negotiate the checks, then their reverse side would be indistinguishable from any other check issued by the Defendants before it was negotiated. The Court has difficulty conceiving how that back of a check, identical to any number of other checks issued by Defendants, would be relevant to the current matter. To the extent that the checks are discoverable evidence, the Court believes that a copy of the front of the check, along with Peavey's testimony that they were never negotiated, is adequate for her to achieve her stated objectives. Enforcement of this motion to compel on this specific item would thus be duplicative and unnecessary.

**VII. Documents pertaining to Peavey's Licensure Applications**

---

[3] The check numbers are 815920, 6029188, 6029432, and 1737960.

Peavy finally petitions Defendants for copies of the medical license applications submitted with the Kentucky Board of Medical Licensure ("KBML") and documentation provided to Dr. John Roberts establishing her failure to obtain her medical license. First, Peavey avers that her medical licence applications are in the possession of Defendants because Nancy Vanderveer, an employee of the University, oversaw the KBML application process for medical residents. She claims that as all licensing was handled through the University, Defendants must be in possession of these applications.

Even accepting the truth of these statements, Peavey's motion inherently assumes that Vanderveer made copies of the applications before passing them onto the KBML. This assumption has been explicitly rejected by Defendants. Moreover, it would seem that Peavey could more easily obtain this information from KBML itself. Although it is no longer a party to this litigation, the federal rules allow Peavey to gather relevant information from third parties like KBML. The Court believes that this would be the more appropriate avenue for Peavey to travel in collecting these applications.

This motion also seeks the release of any notice or document that Dr. John Roberts, a staff member of the University, "received from the [KBLM] concerning their decision regarding [Peavey's] application." DN 93 at 21. Defendants assert that they do not have any documents compliant with this request. In reviewing the current exhibits, Peavey has failed to provide evidence sufficient to show these documents exist or that they are under the control of Defendants. Therefore, this request is denied.

## CONCLUSION

In summary, this motion is improper because the items that Peavey requested have either

been previous supplied to her through earlier disclosures, constitute irrelevant evidence, are not in Defendants' possession, or do not exist. These discovery issues are now resolved and shall not be revisited.  What is more, the Court will no longer abide by the acrimonious language exhibited in the motion practice before it.  Subsequent motions should work to present arguments framed by the facts and the relevant law, not attack the professional reputation of the individuals writing them.

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Second Motion to Compel Discovery (DN 90) is DENIED.