UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:09-CV-00484-R

JENNIFER PEAVEY                                                        PLAINTIFF

v.

UNIVERSITY OF LOUISVILLE, et al.                           DEFENDANTS

## MEMORANDUM OPINION

Defendants have filed a motion for summary judgment (DN 106). Plaintiff has responded (DN 109) and Defendants have replied (DN 111). Plaintiff has also submitted a supplemental response where she sets forth objections to the evidentiary record, the discovery process, and Defendants' description of the facts (DN 109-1). This matter is now ripe for adjudication. For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

Plaintiff Dr. Jennifer Peavey was a medical resident at the Glasgow Family Medicine Residency Program ("GFMRP") at the University of Louisville School of Medicine ("University"). She began her three-year residency on July 1, 2007. She executed a Resident Agreement with the University that covered the period from July 1, 2007 to June 30, 2008 ("2007 Agreement"). DN 106-3 at 1. It defined her rights and relationship with the University.

Peavey's superiors became concerned during her residency that she needed to improve her communication and interpersonal skills. A number of her supervising physicians also stated she had difficulty receiving constructive criticism and completing the records associated with her position. DN 106-4 at 4-6. On March 21, 2008, Peavey met with Dr. Richard Clouse, Assistant Clinical Professor, and Dr. Chris Marshall to evaluate her performance during hospital rotations.

1

There, Peavey asserts that Clouse said she was having cultural problems with staff and patients because she was "black and did not understand how things were done in the good old South." DN 109 at 2. Clouse denies that he made such a comment. Whatever was said, Peavey did not take immediate action, waiting until April 4, 2008 to tell another one of her supervisors, Dr. Asriel, about Dr. Clouse's remark.

Dr. Brent Wright, Director of the GFMRP, spoke with Peavey on May 8, 2008, discussing some issues she had with communication, performance, and professionalism. On June 26, 2008, Dr. Wright wrote to Dr. James O'Brien, Chairman and Professor of Family Medicine, and asked that Peavey be placed on academic probation effective immediately for a variety of reasons. DN 106-5 at 1-2. On Dr. O'Brien's approval, a letter was sent to Peavey outlining the terms of her probation, including a psychiatric evaluation with the Kentucky Physicians Health Foundation ("KPHF"). DN 106-5 at 3-9. In conjunction with the probationary decision, Dr. Wright contacted the Federation of State Medical Boards ("FSMB") and reported "[Peavey's] instructors [had] given reports to [the] residency director regarding [her] eccentric behavior." DN 1-9 at 3.

June of 2008 marked the end of the first year of Peavey's residency. Peavey was required to execute another resident agreement to continue with the University for her second year residency ("2008 Agreement"). Since Kentucky law requires all second-year medical residents obtain a license to practice medicine, execution of the 2008 Agreement by University officials was contingent on Peavey having the license. When Peavey failed to secure a license, the Dean of the University declined to fully execute the 2008 Agreement. DN 106-8. Still, Peavey was not immediately dismissed from the GFMRP; the University instead kept her on,

2

giving her more time to obtain a medical license. On November 3, 2008, the University sent Peavey a letter explaining that without a formal written agreement, she was on a month-to-month implied contract that would terminate at the end of the year if she was unable to satisfy the licensure requirement. DN 106-9 at 1-2. The letter also indicated that her failure to submit to a psychiatric evaluation with the KPHF constituted a violation of her academic probation, which could also lead to her termination. *Id.* On January 7, 2009, the University notified Peavey that she had failed for a third time to secure her medical license, and in accordance with the letter of November 2008, she was released from the GFMRP. DN 106-10 at 1.

In response to all of this, Peavey began the University's administrative grievance process, charging her placement on academic probation was a result of racial discrimination and in retaliation for her complaints about Dr. Clouse. DN 109-16 at 1. She also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on September 3, 2008. Both the grievance committee and the EEOC found no evidence of wrongdoing on the part of Dr. Crouse or the University.

On July 10, 2009, Peavey filed the instant action, *pro se*, against fifteen defendants, alleging violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as well as claims of breach of contract, defamation, libel, slander, wrongful discharge, breach of the covenants of good faith and fair dealing, and fraud and deceit. Currently, the action continues against the University, Dr. Wright, Dr. Roberts, Dr. James O'Brien, Dr. Asriel, Dr. Clouse, Dr. Sherry Jones, Dr. Kevin Flowers, Harvey Johnson, and Dr. James Ramsey ("University" or "Professor Defendants" or collectively "Defendants"). Peavey brings suits against the Professor Defendants in their individual and official capacity. Defendants now offer for this Court's consideration a motion

3

for summary judgment.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I. Counts One and Two: 42 U.S.C. §§ 1981, 1983, 1985, 1986

Under Count One of her amended complaint, Peavey alleges violations of her substantive

and procedural due process rights under the Fourteenth amendment and section 1983. DN 27 at 18-19. For Count Two, Peavey relies upon sections 1981, 1985 and 1986, asserting that Defendants' conduct toward her was impermissibly premised on her race. Defendants advance that both Counts One and Two are barred by the doctrine of sovereign immunity. They also propose there is insufficient evidence in the record for cognizable claims under these statutory provisions.

    a. Eleventh Amendment

  The Eleventh Amendment to the Constitution generally bars suits brought in federal court against a state and its agencies. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). A suit against a state official in his or her official capacity is considered a suit against the official's office. *Id*. (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Public universities in Kentucky and their directors are state agencies and officials for Eleventh Amendment purposes. *See Hutsell v. Sayre*, 5 F.3d 996, 999-1000 (6th Cir. 1993) (explaining why the University of Kentucky was an "arm of the state under state law"); *Weathers v. Ky. State Univ.*, No. 3: 09-CV-00004, 2009 WL 1683711, at *3 (E.D. Ky. June 16, 2009) (explaining that lawsuit against university officials including the president was barred by the Eleventh Amendment); *Mattingly v. Univ. of Louisville*, No. 3:05CV-393, 2006 WL 2178032, at *5 (W.D. Ky. July 28, 2006) (state law claims against university professor barred by sovereign immunity); *Ward v. Members of Bd. of Control of E. Mich. Univ.*, 700 F. Supp. 2d 803, 812 (E.D. Mich. 2010) (suit against professors for money damages in their official capacity was barred by the Eleventh Amendment). There are three exceptions to the Eleventh Amendment's bar: (1) when the state consents to suit; (2) when Congress has abrogated a state's sovereign immunity; and (3)

when pursuant to *Ex parte Young*, 209 U.S. 123 (1908), a litigant seeks prospective injunctive or declaratory relief compelling a state official to comply with federal law. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Here however, the present facts do not implicate any of these exceptions since there has been no explicit waiver of sovereign immunity by either the state or federal government and Peavey's requests money damages rather than injunctive relief.

Earlier legal rulings show that these claims against the University and the Professor Defendants in their official capacities are barred by the protections of the Eleventh Amendment. *See e.g.*, *Ejikeme v. Violet*, 307 F. App'x 944, 951 (6th Cir. 2009) (bar of Eleventh Amendment applies to claims under section 1981); *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993) ("Congress did not intend to abrogate the states' Eleventh Amendment immunity by passing section 1983."); *Davis v. Kent State Univ.*, 928 F. Supp. 729, 732 (N.D. Ohio 1996) (state university was entitled to sovereign immunity for claim under section 1985); *An-Ti Chai v. Mich. Technological Univ.*, 493 F. Supp. 1137, 1162 (W.D. Mich. 1980) (same); *see McCrary v. Ohio Dep't of Human Servs.*, 229 F.3d 1153 (6th Cir. 2000) (table) ("[Plaintiff's] failure to state a claim under [section] 1985 is fatal to his claim under § 1986 because a necessary element of any [section] 1986 claim is a proper claim under [section] 1985." (citing *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990))). For these reasons, the claims against the University and the Professor Defendants in their official capacities should be dismissed in their entirety. Since the Professor Defendants also have individual capacity claims leveled against them however, the Court will examine the substance of these allegations as well.

b. 42 U.S.C. § 1981

This section of the Civil Rights Act of 1964 "prohibits intentional race discrimination in

6

the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001)). A plaintiff may seek to show discrimination either through direct or indirect evidence. *Id*. (citing *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1985)). Though racially charged statements may at times suffice for direct evidence under this analysis, 45 Am. Jur. 2d *Job Discrimination* § 2384 (collecting cases), the remark in this matter is different. According to Peavey, Clouse said her problems with patients were because she was "black" and "didn't understand how things were done in the good old South." DN 106-4 at 2. This comment is not direct evidence of racial discrimination as it is not centered around Peavey's race (focusing instead on where she was from) and is the only incident where she claims she heard a derogatory remark. *See Hall v. Mich. State Police Dept.*, 290 F. App'x 913, 917 (6th Cir. 2008) ("[I]solated and ambiguous comments are insufficient to support a finding of direct discrimination." (quoting *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 239 (6th Cir. 2005))). Therefore, Peavey must prove intentional discrimination inferentially through the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). *See Amini*, 440 F.3d at 358.

> To succeed on a 1981 claim, Peavey must both plead and prove the following:
>
> (1) [She] belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against [her] on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a).

*Id*. (citation omitted). Peavey cannot establish a prima facie case because she cannot satisfy the second element - that the Professor Defendants' actions were motivated by discriminatory intent. First, the remark was made by Dr. Wright, who was not directly involved in the decision to put

7

her on probation. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) ("Statements by nondecisionmakers . . . cannot suffice to satisfy the plaintiff's burden . . . of demonstrating [discriminatory] animus." (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998))) (quotation marks omitted). Second, Peavey overlooks that she has the burden of proof to show discriminatory intent. *See Amini*, 440 F.3d at 360 ("[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." (quoting *Burdine*, 450 U.S. at 253))). Instead of attacking the proffered reasons for her probation, Peavey rests upon the assertions within her complaint and response; thus, her claim under section 1981 is insufficient to continue. Third, Dr. Clouse's lone statement is inadequate to establish the inference of racial discrimination. *Jones v. Potter*, 488 F.3d 397, 408 (6th Cir. 2007) (isolated remark insufficient for showing adverse actions were pretext for discrimination); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998) (isolated remarks by individual without managerial authority were not indicative of discrimination). Finally, there was substantial documentation supporting the offered reasons for Peavey academic probation - her inability to communicate and accept feedback as well as concerns over her professionalism.[1] DN 106-5 at 1.

### c. 42 U.S.C. § 1983

---

[1] Peavey has attached an affidavit to her response affirming that "[n]o one associated with the [GFMRP] informed me I needed to improve my interpersonal and communication skills." DN 109-12 at 2-3. Such a statement is rebutted by an overwhelming amount of evidence. DN 106-4 at 2-10, 12; DN 106-5 at 12; DN 109-3 at 2; DN 109-16 at 1-3. As this assertion by Peavey has been consistently refuted by the weight of the evidence, the Court declines to accept this portion of her affidavit. *See United States v. Murphy*, 937 F.2d 1032, 1040 (6th Cir. 1991) ("Though all inferences must be drawn in favor of the nonmoving party when a court considers a motion for summary judgment, the nonmoving party is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the nonmovant's position." (citations and quotation marks omitted)).

Under section 1983, Peavey alleges violations of her procedural and substantive due process rights under the Fourteenth Amendment. With the former, Peavey objects to the process she was afforded when she was placed on probation and ultimately dismissed from the GFMRP. DN 27 at 18-20. The Court must answer two questions about Peavey's claim to properly analyze it: (1) does she have a property interest sufficient for due process protection; and (2) if she indeed possesses such an interest, what is the proper amount process to which she is entitled? *Leary v. Daeschner*, 228 F.3d 729, 741-42 (6th Cir. 2000). Peavey asserts that she had an employment contract with the University. She is incorrect. The 2007 Agreement contains the following language in clause seven: "It is agreed and understood by the parties that the Physician's relationship to the University is that of a student to an academic institution and not that of an employee and employer." DN 106-3 at 1. The academic probationary process described in the student handbook reiterates this "student" designation. DN 106-5 at 8 ("Residents in [the University's] residency programs are classified as students . . . .").

Finding that Peavey is a student and not an employee, the Court applies the following Sixth Circuit precedent:

> In the case of an academic dismissal or suspension from a state educational institution, when the student has been fully informed of the faculty's dissatisfaction with the student's academic progress and when the decision to dismiss was careful and deliberate, the Fourteenth Amendment's procedural due process requirement has been met. No formal hearing is required for academic decisions because such academic decisions require an expert evaluation of cumulative information and are not readily adapted to the procedural tools of judicial or administrative decisionmaking.

*Ku v. Tennessee*, 322 F.3d 431, 436 (6th Cir. 2003) (upholding the dismissal of a medical student) (citations and quotation marks omitted). Here, Peavey was informed both in person and by letter of the decisions to place her on probation. Dr. Wright, her immediate supervisor,

9

detailed a number of issues with her performance as a physician, in particular her unprofessional behavior and her inability to communicate effectively. DN 106-7 at 1. Although it was not required to do so, the University also held a grievance hearing on November 24, 2008, where Peavey and the administration reviewed both the decision to put her on probation and her contentions that it was driven in retaliation for her complaints about Dr. Clouse. There, Peavey read a written statement into the record, introduced testimony from at least one witness, submitted documents to support her version of events, and was represented by legal counsel. DN 111-1 at 1-3. The Court believes that this process amply protected whatever property rights she may have had.

"Substantive due process claims are usually divided into two main categories: (1) claims asserting the deprivation of a particular statutory or constitutional right, privilege, or immunity, and (2) claims alleging an egregious, arbitrary abuse of government power that 'shocks the conscience.'" *Buchanan v. Apfel*, 249 F.3d 485, 491 (6th Cir. 2001) (citation omitted). Since the Sixth Circuit has indicated situations that shock the conscious are almost exclusively ones involving excessive force, *Pusey v. City of Youngstown*, 11 F.3d 652, 656-57 (6th Cir. 1993), Peavey must show that Defendants' actions have deprived her of some constitutional guarantee. *Id*. This she cannot do as she has not been denied any of her constitutional rights.

### d. 42 U.S.C. §§ 1985, 1986

Although Peavey fails to indicate upon which section of 42 U.S.C. § 1985 she is relying, her case is only actionable under subsection (c) of the statute. *See* 42 U.S.C. § 1985(a)-(b). For a claim under this provision, she must show "(1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to

person or property, or a deprivation of a right or privilege of a United States citizen." *Briscoe v. Jackson*, 285 F. App'x 205, 208 (6th Cir. 2008) (quoting *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)). The record is without a scintilla of evidence that the Professor Defendants had a meeting of the minds or acted in concert to deprive Peavey of her constitutional rights. *See id*. Indeed, she has declined to make specific allegations about the majority of the Professor Defendants and therefore determining how they acted to further the conspiracy is impossible. Lastly, since she has not offered a sufficient basis to proceed on her claim under section 1985, her section 1986 claim must fail as well. *See McCrary*, 229 F.3d at 1153.

## II. Counts Three: Breach of Contract

For her breach of contract claim, Peavey points to the partially completed 2008 Agreement. She claims the contract was fully executed and therefore her termination in January of 2009 was a breach of contract. Defendants state that breach of contract is an improper theory of recovery because it is barred by the Eleventh Amendment. They also contend that even ignoring this theory, the agreement was never fully executed and accordingly there was no contract to breach.

No written contract existed with Peavey. Clause twelve of the "Resident Agreement" states "[t]his contract is not valid until signed by the Dean of the School of Medicine or the Dean's designated representative." DN 106-8 at 1. The space where the Dean is suppose to sign and date the 2008 Agreement is blank. *Id*. Furthermore, Peavey's claims that the contract is complete and enforceable bears little weight when considering she and the University executed the 2007 Agreement the year before. It is identical to the 2008 Agreement and includes the same requirement for the Dean's signature. DN 106-3 at 1. In the 2007 Agreement, the Dean's signature is notably present. *Id*.

11

At best, Peavey had an oral or implied contract with the University regarding her position; however, Kentucky has only waived its sovereign immunity with written contracts. *See* KRS § 45A.245; *Commonwealth. v. Whitworth*, 74 S.W.3d 695, 699-700 (Ky. 2002) ("Suit cannot be instituted against the Commonwealth on a claim unless sovereign immunity has been specifically waived, as it has been on a lawfully authorized written contract."); *Ashley v. University of Louisville*, 723 S.W.2d 866, 867-68 (Ky. Ct. App. 1986) (professor without written contract with a University of Louisville could not bring suit to enforce implied contract). Thus, this cause of action is barred by the Eleventh Amendment and should be dismissed.

### III. Count Four: Defamation and Libel

Peavey's complaint asserts Dr. Wright's statements to the FSMB that she had exhibited eccentric behavior constitutes defamation and libel. In *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541 (W.D. Ky. 2005), this Court wrote on Kentucky's law surrounding defamation and libel:

> In Kentucky, in order to state a claim for defamation, the Plaintiff must show that: 1) a defamatory statement was made; 2) of or concerning the Plaintiff; 3) which was published to a third party; and 4) which caused injury to the Plaintiff's reputation. A defamatory statement is measured by looking at the publication as a whole to gauge the effect on the average reader. Harm to one's reputation is presumed if the publication is defamatory per se, meaning the words in their essence must tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people and to deprive him of their friendship, intercourse and society. However, written or printed publications, which are false and tend to injure one in his reputation or to expose him to public hatred, contempt, scorn, obloquy, or shame, are libelous per se. In the absence of defamation per se and libel per se, the party must prove injury through extrinsic facts or explicatory circumstances.

*Id*. at 553-54 (internal citations and quotation marks omitted). The Defendants have raised four defenses in the face of Peavey's complaint: she has expressly waived her right to object to the release of information to the KBML and FSMB, the statement was a part of a privileged

communication, the statement was an opinion, and the statement was true.

The Court agrees both that the statement was an opinion and true. "An expression of opinion, as opposed to a defamatory statement of fact, is entitled to an absolute privilege." *Biber v. Duplicator Sales & Service, Inc.*, 155 S.W.3d 732, 737 (Ky. Ct. App. 2004). In *Welch v. Am. Publishing Co. of Ky.*, 3 S.W.3d 724 (Ky. 1999), the Kentucky Supreme Court wrote that indefinite or imprecise statements could not be defamatory and libelous statements, since they defy a precise definition. *Id*. at 730. The court also cited *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) for its proposition that "only provable false assertions of fact can provide the basis for a defamation action." *Welch*, 3 S.W.3d at 730. Describing someone as "odd" or "eccentric" is sufficiently nebulous that this Court believes it falls into the arena of opinion rather than fact. *See id*. (interpreting the terms "broke" and "squandered" in the context of describing a city's finances as matters of opinion).

To the extent one can prove or disprove eccentricity, the statement that Peavey displayed such behavior is also true. In her grievance and academic probation investigation, Dr. Wright described the following incidents: (1) Peavey telephoned a hospital executive at home and inquired about a nurse who had been fired; (2) Peavey discussed the nurse's termination at work with other nurses; (3) Peavey's supervisors were contacted and told she was difficult to work with; (4) Peavey told a hospice patient that he could stay in the hospital for six months; (5) Peavey was not able to accept feedback from her supervisors and the University's professors. DN 106-4 at 5. The Court believes that this behavior, most of which Peavey does not contest, deviates from the usual methods of the University and GFMRP and thus may be accurately characterized as eccentric. *See* Oxford English Dictionary Online, www.dictionary.oed.com (last visited June 23, 2011) (defining "eccentric" as "deviating from usual methods, odd,

whimsical"). As truth is an absolute defense to defamation and libel, *see Biber*, 155 S.W.3d at 737, the Defendants are immune from this cause of action.

### IV. Count Five: Wrongful Discharge, Breach of Covenant of Good Faith, and Fair Dealing

Peavey continues her complaint, alleging Defendants breached their implied covenant of good faith and fair dealing in the 2007 and 2008 Agreements and wrongfully discharged her. As an initial matter, since the 2008 Agreement never came into existence, it cannot form the basis for these theories of recovery. Next, the 2007 Agreement made clear that Peavey was a student and not an employee of the University. DN 106-3 at 1. Consequently, she could not have been wrongfully discharged. *See* Julie Namkin, 21 Kentucky Practice: Elements of an Action § 6:2 (2010) (describing the elements of wrongful discharge). Third, even if the Agreements were employment based, "Kentucky law does not recognize a claim of breach of the covenant of good faith and fair dealing in the employment context." *Wells v. Huish Detergents, Inc.*, 19 F. App'x 168, 178 (6th Cir. 2001) (citing *McCart v. Brown-Forman Corp.*, 713 F. Supp. 981, 983 (W.D. Ky. 1988)). Finally, to the extent that the breach of the duties of good faith and fair dealing are premised on the implied contract from July of 2008 to January of 2009, the Defendants did not breach these duties by releasing Peavey from her position. The terms of her implied contract and the 2007 Agreement made clear that her continued residency was contingent on her securing a Kentucky medical license by the end of her first year's residency. DN 106-3 at 1; DN 106-9 at 1. Since she failed in this endeavor, the University was within its contractual rights to terminate their relationship. *See Farmers Bank and Trust Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) ("An implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights.").

**V. Count Six: Fraud**

Peavey declares that Defendants are liable for the state law tort of fraud. She says that the Defendants forced her to submit to a psychiatric evaluation, barred her from her place of employment, submitted allegedly false statements to the FSMB, and provided a false basis for her dismissal from her residency. DN 27 at 26-27. She also maintains she relied upon their representations to her detriment. *Id*. at 27. Defendants now move to exclude this claim because it has been improperly pled according to Federal Rule of Civil Procedure 9(b). Peavey urges that her amended complaint should be afforded deference because she is proceeding *pro se*.

"The main purpose behind Rule 9(b) is to provide notice of a plaintiff's claim to a defendant so that the defendant may be able to prepare an informed responsive pleading." *Ferron v. Metareward, Inc.*, 698 F. Supp.2d 992, 997 (S.D. Ohio 2010) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)). As Peavey has explained her fraud claim to Defendants during her deposition and in response to this motion, the Court will ignore whether the claim is sufficiently pled in her complaint. Instead, the pertinent query is whether there is enough evidence to proceed to a jury.

Kentucky law mandates that for civil fraud, a plaintiff must establish the following elements by clear and convincing evidence: (1) material representation, (2) which is false, (3) known to be false or made recklessly, (4) made with inducement to be acted upon, (5) acted in reliance thereon and (6) causing injury. *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. 1978)). In her response to this motion, Peavey provided the following basis for this claim: "Defendants represented to Dr. Peavey they would conduct a fair, impartial, and honest investigation pursuant to the University's rules, regulations, and policies. As the evidence shows, they did not." DN

15

109 at 17.

There is inadequate evidence in the record that would permit this claim to proceed to a jury. Assuming the investigation was unfair and biased, there is no proof Defendants made statements to the contrary or that they were made recklessly or with conscious knowledge of their falsehood. Nor does Peavey show she acted in reliance upon such statements or that the false statements about the fairness of the investigation caused her injury. The same can be said for the other bases for her claim mentioned in her amended complaint. Such a finding is also supported by Peavey's deposition testimony, where despite prodding by defense counsel, she was unable to point to a false or reckless statement made by the University or Professor Defendants upon which she detrimentally relied. DN 111-4 at 1-10. In fact, several of the statements that she believes were false were made to third parties and not to her; consequently, they may not form the foundation of this claim. Overall, there is simply no basis for Peavey's claim of fraud.

### **VI. Peavey's Response to Defendants Statement of Facts**

Attached to this motion is "Plaintiff's Controverted Response to Defendants' Statement of Facts and Plaintiff's Statement of Facts." DN 109-1. In it, Peavey provides a lengthy description of this matter's discovery disputes and restates her beliefs that Defendants and their attorneys have fabricated evidence and hidden discoverable materials. There is no merit to these serious accusations. Twice the Court has ruled on motions to compel submitted by Peavey and twice it has found that the Defendants and their attorneys were acting in accordance with the Federal Rules of Civil Procedure. DN 81; DN 99. Accordingly, the Court does not address the various issues raised in this document.

### **CONCLUSION**

FOR THE FOREGOING REASONS, Defendants' motion for summary judgment is GRANTED. All the remaining claims against the Defendants are DISMISSED. An appropriate order shall issue.